507 S.E.2d 673

PENDLETON CITIZENS FOR COMMU-
NITY SCHOOLS, a West Virginia Non-
profit Corporation; and Glen L. and Jo-
lene Eye; and Chris Eye, a juvenile by
his parent and next friend Jolene Eye,
and Darrell E. Nichols and Diane Hiner
and Krista Hiner by her parent and next
friend Diane Hiner; and Danny L. and
Linda J. Judy; and Brian Judy by his
next parent and next friend Linda J.
Judy, and Norman and Karen Kile; and
Nicholas Kile by his parent and next
friend Karen Kile; and Craig and Paula
Kisamore, and April and Jonathan Kisa-
more by their parent and next friend
Paula Kisamore; and Charles M. and
Shirley Lamborne; and Michelle and
Michael Lamborne by their parent and
next friend Shirley Lamborne; and Ly-
sle and Kathy Smith; and Linsley Smith
by her parent and next friend Kathy
Smith, Plaintiffs below, Appellees,

v.

Henry MAROCKIE, State Superintendent
of Schools; The West Virginia Board of
Education; The West Virginia School
Building Authority; Clacy Williams, Ex-
ecutive Director of the West Virginia
School Building Authority; and The
Pendleton County Board of Education,
Defendants below, Appellants.

PENDLETON CITIZENS FOR COMMU-
NITY SCHOOLS, a West Virginia Non-
profit Corporation; and Glen L. and Jo-
lene Eye; and Chris Eye, a juvenile by
his parent and next friend Jolene Eye,
and Darrell E. Nichols and Diane Hiner
and Krista Hiner by her parent and next
friend Diane Hiner; and Danny L. and
Linda J. Judy; and Brian Judy by his
next parent and next friend Linda J.
Judy, and Norman and Karen Kile; and
Nicholas Kile by his parent and next
friend Karen Kile; and Craig and Paula
Kisamore, and April and Jonathan Kisa-
more by their parent and next friend
Paula Kisamore; and Charles M. and

Shirley Lamborne; and Michelle and
Michael Lamborne by their parent and
next friend Shirley Lamborne; and Ly-
sle and Kathy Smith; and Linsley Smith
by her parent and next friend Kathy
Smith, Plaintiffs below, Appellees,

v.

Henry MAROCKIE, State Superintendent
of Schools, The West Virginia Board of
Education; The West Virginia School
Building Authority; and Clacy
Williams, Executive Director of the
West Virginia School Building Authori-
ty, Defendants below, Appellants.

Nos. 25138, 25139.

Supreme Court of Appeals of
West Virginia.

Submitted June 9, 1998.

Decided July 14, 1998.

Robert M. Bastress, Esq., Morgantown, West Virginia, James B. Lees, Jr., Esq., Charleston, West Virginia, Attorneys for Appellees.

Howard E. Seufer, Jr., Esq., John R. Teare, Jr., Esq., Kimberly S. Croyle, Esq., Bowles Rice McDavid Graff & Love, PLLC, Attorneys for Appellant Pendleton County Board of Education.

Gregory W. Bailey, Esq., Charleston, West Virginia, Amicus Curiae, West Virginia Association of School Administrators.

M.E. "Mike" Mowery, Esq., M. Christine F. Morris, Esq., Michael R. Crane, Esq., Jennifer B. Walker, Esq., Charleston, West Virginia, Amicus Curiae, The West Virginia Legislature.

Darrell V. McGraw, Jr., Esq., Attorney General, Kelli D. Talbott, Esq., Senior Assistant Attorney General, Katherine A. Schultz, Esq., Senior Deputy Attorney General, Charleston, West Virginia, Attorneys for Appellants Henry Marockie, The West Virginia Board of Education, The West Virginia School Building Authority, and Clacy Williams.

Franklin D. Cleckley, Esq., Morgantown, West Virginia, Amicus Curiae, The Annenberg Rural Challenge.

STARCHER, Justice:.

In the instant case, the Circuit Court of Kanawha County ruled that the closing of a high school in Circleville, in Pendleton County, violates both statutory law and our state constitutional right to education. We conclude that the circuit court erred in both conclusions. Consequently, we reverse the circuit's court's decision.

## I.

### Facts and Background

This case arises out of the closing of a small (130 students in grades 7–12) high school program [1] in Circleville, Pendleton County, West Virginia. In 1995, the Pendleton County Board of Education decided to

---

1. The Circleville School contains kindergarten through grade 12. The Pendleton County Board of Education, with funding from the West Virginia School Building Authority, plans to close the Circleville School, send grades 7–12 to a new consolidated high school in Franklin, and build a new regional elementary school in Circleville. Appellees did not contest the elementary school aspect of the County Board's plans, nor the building of a new high school in Franklin.

Circleville School is 62 years old. It was built by the Works Progress Administration, authorized by President Franklin Roosevelt, and is listed on the National Register of Historic Places. Circleville School's problems include: widespread fire code violations, including inadequately sized stairwells; an antiquated electrical system; inadequate lighting; inadequate and severely warped flooring that is in need of repair or replacement, including cracked floor joists which provide structural support for the building; cracks in a boiler room floor which allow rain water to percolate up through the floor, causing damage to and shutdown of the electric motors that run the circulating pumps on the

boilers; inadequate windows in need of total replacement; exterior facade that is rotting and can be easily knocked or pulled off the building; serious deficiencies related to Americans with Disabilities Act requirements; the presence of asbestos throughout the building; lack of appropriate space for new or existing programs; severe water damage to plaster and electrical wiring caused by roof leaks and plumbing failures; extensive damage to drywall; dangerously exposed lighting fixtures and hooks on the gymnasium stage; rotting wooden structures in the gymnasium; deficient roofing in need of repair or replacement; and lack of a sprinkler system.

In order to renovate the Circleville School building to current health and safety codes for student occupation, the evidence was that one would essentially have to gut the building, leaving the outside walls standing, and start over. The appellants estimated that full repairs would cost more than $2,000,000; the appellees estimated a lesser figure. The circuit court made no specific findings on this issue other than to state that rehabilitation was feasible.

require that Pendleton County students in grades 7–12 who would have attended school in Circleville would instead attend a new, county-wide consolidated high school being built in Franklin, about 17 miles from Circleville. Franklin is the county seat, and has an existing high school, with about 500 students in grades 7–12. The new consolidated high school would have about 650 students.

The plaintiffs below and appellees before this Court are high school students from Circleville School, their parents, and Pendleton Citizens for Community Schools, an organization whose members want to preserve Circleville High.

The defendants below and appellants before this Court are the West Virginia Superintendent of Schools, the West Virginia Board of Education ("State Board"), the West Virginia School Building Authority ("SBA") and its director, and the Pendleton County Board of Education ("County Board").

The appellees made two general contentions in the circuit court. First, appellees contended that the SBA, which provides money to counties for school construction,[2] ordinarily awards such money only to fund construction at schools that meet minimum "economies of scale" size requirements—for high schools, 200 per grade level.

This requirement may be waived only when a school will take all of a county's students at a certain grade level, as is the case for the new consolidated high school in Pendleton County. Without such a "single county high school waiver," the new high school would have to have 1,200 students—6 grades times 200 students per grade—to achieve "economies of scale." There are not 1,200 high school students in all of Pendleton County.

The appellees contend that this SBA funding practice effectively forces county school boards in sparsely populated rural counties to consolidate high schools, regardless of and to the overall educational detriment of the children who have been attending smaller schools. Appellees also contend that school boards, particularly in less prosperous, sparsely populated, rural counties, cannot themselves ordinarily refurbish or replace smaller, non-consolidated high schools like Circleville, without funding assistance from the SBA.

Thus, say appellees, the SBA's use of "economies of scale" in evaluating requests for funding effectively forces the closure of smaller community high schools that are otherwise efficient and effective in the ways that matter most to their students and communities.[3]

The appellees contend that the SBA's use of "economies of scale" is contrary to the SBA's statutory direction under *W.Va.Code,* 18–9D–16 [1993]. The appellees also contend that the SBA's practices are unconstitutional, because they impair the appellees' state constitutional right to educational services and opportunities, without a rational basis and without being narrowly and necessarily tailored in the least restrictive fashion to serve a compelling state interest.

Additionally, the appellees make a like argument with respect to the State Board's policies pursuant to *W.Va.Code,* 18–9A–5a [1990] governing salaries for a county's teachers, administrators, and school service personnel. These salary policies require certain pupil-personnel ratios to obtain maximum state funding for salaries. The appellees contend that these ratios, like the SBA's

---

2. "The Legislature established the SBA, in part, in response to this Court's concern in *Pauley v. Kelly,* 162 W.Va. 672, 255 S.E.2d 859 (1979), that the State of West Virginia had failed to meet the guarantee of the West Virginia Constitution to provide 'a thorough and efficient system of free schools.' W. Va. Const. Art. XII, Sec. 1." *State ex rel. School Bldg. Authority of West Virginia v. Marockie,* 198 W.Va. 424, 427 n. 2, 481 S.E.2d 730, 733 n. 2 (1996).

3. Although there was a substantial history of contention in the Pendleton County School Board about closing Circleville School, we omit that factual recital. We have recognized the substantial deference that must be given to local school boards in their decisions to close schools. *See McComas v. Board of Educ. of Fayette Co.,* 197 W.Va. 188, 475 S.E.2d 280 (1996). In the instant case, the appellees argue and the circuit court found that in order to obtain SBA and State Board funding, a local school board has little choice in whether or not to consolidate.

"economies of scale" school size preferences, discourage the continued existence of smaller unconsolidated high schools, with the same allegedly unconstitutional effects.

In response to the appellee's contentions, the appellants assert that the SBA and State Board policies do not drive consolidation. Furthermore, the appellants say that—assuming *arguendo* that SBA and State Board policies do drive consolidation—any such bias toward consolidation is not contrary to any statute nor a violation of the appellees' constitutional right to education.

On November 7, 1997, after receiving testimonial and documentary evidence from all parties, the circuit court issued a 33–page order, finding *inter alia* that:

a. In order to create large enough enrollments to meet the [SBA/State Board-mandated] economies of scale, school boards in sparsely populated counties must create extremely large catchment areas, and in some cases consolidate county-wide, thus requiring students to spend inordinately long periods of time commuting.

\*     \*     \*     \*     \*     \*

c. The long commutes interfere with students' study time, their ability to participate in extracurricular activities, and their educational achievement.

d. Larger schools mean lower participation rates for students in extracurricular activities in the life of the school.

e. Students who are bused the longest distances generally live in the most rural areas of the county and generally come from families with a lower socio-economic status than those who live nearer to the consolidated school.

f. The level of parental involvement, an important barometer of students' educational achievement, diminishes when schools become larger and more distant.

g. Small community schools are more effective in blunting the effects of low socio-economic status on students' educational achievement.

h. Busing students from families and communities with a relatively low socio-economic status (SES) into consolidated schools in communities and with students from a higher socioeconomic status has a significant negative impact on the educational achievement of the lower SES students.

I. [sic] Closing community schools and busing rural students to consolidated schools, especially when the bused children from lower socio-economic backgrounds, create a significant risk of substantially increasing the dropout rate among students.

j. Consolidation often creates deep and long lasting divisions between the consolidated communities and adversely affects parental involvement in the schools, dropout rates, student achievement levels, and generally the quality of the educational experience.

k. Large schools are not just dysfunctional for poor children; such schools dramatically compound the disadvantages that poor children inevitably confront.

l. Despite the negative correlation between school size and student achievement for students from low socio-economic backgrounds, the SBA's school building program has disproportionately, at a significant rate, closed schools in communities serving low income populations.

The circuit court ruled as follows:

Based on the foregoing findings and conclusions, the plaintiffs are entitled to a declaratory judgment stating as follows:

A. The decisions by the Pendleton County and West Virginia State Boards of Education to close Circleville High School were arbitrary and were in violation of Article XII, § 1 and Article III, § 10 of the West Virginia Constitution and are therefore null and void.

B. The SBA's emphasis that county boards' funding proposals either meet a minimum school size or maximize school size to qualify for school construction funds and the SBA's administration of the economies of scale criterion violate Article XII, § 1 and Article III, § 10 of the West Virginia Constitution and West Virginia Code 18–9D–15 and 18–9D–16.

C. To the extent that W. Va.Code 18–9A–5a fails to account for the need of

sparsely populated counties to retain professional educators and service personnel in excess of the ratios funded by that section in order to maintain community schools, the section fails to meet the obligations imposed on the State by Article XII, § 1 and Article III, § 10 of the West Virginia Constitution to provide a thorough and efficient education and to avoid discrimination in the provision of such education.

Further, based on the foregoing findings and conclusions, plaintiffs are entitled to the following injunciton [sic]:

A. The West Virginia State Board of Education is hereby ordered to withdraw its approval of the closure of Circleville High School (grades 7–12) and that school's consolidation with Franklin High School.

B. The West Virginia School Building Authority and its director are hereby enjoined from continuing to use and rely upon a minimum school size or the maximization of school size within a county as a criterion for funding and from using any set of criteria that fails to recognize the educational value of community schools;

C. The West Virginia Board of Education and the Superintendent of Schools are hereby enjoined from applying the limits on the funding of professional educators and service personnel when such limits would force a school closure that is educationally disadvantageous.

## II.

### Standard of Review

■ Initially, we must acknowledge that the circuit court's findings as to factual matters (including the findings quoted *supra*), are strongly contested by the appellants. Appellants ask us to review these findings under a less deferential standard than we ordinarily do for a circuit court's factual findings, because they are "constitutional facts." *See Appalachian Power v. Tax Dept.*, 195 W.Va. 573, 582, n. 5, 466 S.E.2d 424, 433 n. 5 (1995). However, because we do not address the circuit court's factual findings directly (*see* III. *infra*), we need not decide what

particular standard is appropriate for their review. Matters of law, of course, we review *de novo. Id.*

## III.

### Discussion

Under any standard of review, to undertake a point-by-point review of the circuit court's lengthy and sweeping factual findings in the instant case would be a daunting task. The dense and lengthy arguments of the parties and *amici curiae* are tangled with numerous references to contending numbers, percentages, studies, tables, etc., etc.,—all attacking and defending the circuit court's findings. This numbing thicket of figures contrasts oddly with the real issues in this case—issues that are truly matters of the heart and soul.

■ Rather than taking up the major task of dissecting these disputes about the circuit court's findings, we take the simpler approach of accepting the circuit court's findings, for argument's sake only—insofar as the court found: (1) that SBA and State Board funding policies for school construction and salaries promote and substantially contribute to the closing of smaller high school programs like Circleville High, and drive the establishment of larger, consolidated high schools; and (2) that such high school consolidations, including the Pendleton County high school consolidation at issue in the instant case, have more of an adverse effect on the children whose former school is being closed than on the other children closer to the community where the consolidated school is located—these effects being lengthy travel, difficulties in full participation, etc.— in short, all of the negative effects listed in the circuit court's factual findings that are quoted *supra.*

We emphasize that we are not stating our agreement with these findings of the circuit court. We simply adopt them as a platform for our further analysis.

Given these assumed facts, two legal questions are posed for our review by the circuit court's decision: (1) Is the alleged SBA/State Board "bias" in favor of consolidation, as exemplified in the Circleville case, a violation

of any statute? (2) Is the alleged SBA/State Board "bias" in favor of consolidation, as exemplified in the Circleville case, unconstitutional?

## A.

### Statutory Claim

Appellees claim and the circuit court found that SBA/State Board "bias" in favor of consolidation violates the mandates of *W.Va. Code*, 18–9D–16 [1993].

*W.Va.Code*, 18–9D–16(d) [1993], in part, calls for the SBA to evaluate requests for school construction funds in terms of how they meet the following goals:

(1) Student health and safety; ·

(2) Economies of scale, including compatibility with similar schools that have achieved the most economical organization, facility utilization and pupil-teacher ratios;

(3) Reasonable travel time and practical means of addressing other demographic considerations;

(4) Multicounty and regional planning to achieve the most effective and efficient instructional delivery system;

(5) Curriculum improvement and diversification, including computerization and technology and advanced senior courses in science, mathematics, language arts and social studies;

(6) Innovations in education;

(7) Adequate space for projected student enrollments; and

(8) To the extent constitutionally permissible, each facilities plan shall address the history of efforts taken by the county board to propose or adopt local school bond issues or special levies.

Appellees' argument that the SBA is violating these statutory provisions is based on the SBA's alleged policy of only funding projects that either meet "economies of scale" or consolidate all of a county's students. Appel-lees also complain that the SBA uses a numerical evaluation and ranking system for evaluating requests for school construction funding, using assigned scores for the above factors, that gives greater weight (a 1.5 multiplier) to the "economies of scale" factor than to some other factors.[4]

The appellees suggest that a prohibition against giving such an emphasis to "economies of scale" may be inferred from the lack of specific legislative authorization for such an emphasis. The appellees also argue that the requirement in *W.Va.Code*, 18–9D–16(d)(2) [1993] that the SBA consider "similar schools that have achieved the most economical organization, faculty organization and pupil-teacher ratios ...," requires the SBA to not prefer, on the basis of "economies of scale," any "ideal" school size—if this size is contrary to a student-specific optimal educational size, established on a case-by-case basis.

■ Reading the statute, we conclude that to find in this statutory language a prohibition against the SBA's giving emphasis or greater weight to "economies of scale" is a stretch, to say the least. Our law does not support making such a stretch. In the absence of statutory, constitutional, public policy or similar direction and guidance to the contrary, an agency's reasonable interpretation and construction of its authorizing and directive statutes, while certainly not dispositive, should be given substantial weight. *See Appalachian Power, supra*, 195 W.Va. at 582, 466 S.E.2d at 433 (1995).

■ We conclude that *W.Va.Code*, 18–9D–16 [1993] does not prohibit the School Building Authority from exercising discretion in weighing and applying the factors listed in *W.Va.Code*, 18–9D–16 [1993], in order to prioritize requests for funding. Therefore, appellees' statutorily-based attack on the SBA's weighing of the "economies of scale" factor must fail.[5]

4. The SBA also gives greater weight (a 1.5 multiplier) to student health and safety, curriculum improvement, and innovations in education.

5. The appellees offer no argument that the State Board of Education's ratios used in funding for school personnel are contrary to any statutory provisions. Indeed, these ratios are established at *W.Va.Code* 19–9A–5a (1990), and the circuit court's ruling found that they were unconstitutional insofar as they forced consolidation.

## B.

### Constitutional Claim

We held in Syllabus Points 3 and 4 of *Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979), that:

3. The mandatory requirements of "a thorough and efficient system of free schools" found in Article XII, Section 1 of the West Virginia Constitution, make education a fundamental, constitutional right in this State.

4. Because education is a fundamental, constitutional right in this State, under our Equal Protection Clause any discriminatory classification found in the State's educational financing system cannot stand unless the State can demonstrate some compelling State interest to justify the unequal classification.

Additionally, we have stated:

"[I]f the State takes some action which denies or infringes upon a person's fundamental right to an education, then strict scrutiny will apply and the State must prove that its action is necessary to serve some compelling State interest. Furthermore, any denial or infringement of the fundamental right to an education for a compelling State interest must be narrowly tailored." *Phillip Leon M. v. Greenbrier County Board of Education*, 199 W.Va. 400, 409, 484 S.E.2d 909, 918 (1996) (McHugh, J., concurring, in part, and dissenting, in part) (citations omitted). *W.Va. Const.* art. XII, section 1.

Syllabus Point 2, *Cathe A. v. Doddridge County Bd. of Educ.*, 200 W.Va. 521, 490 S.E.2d 340 (1997).

Assuming (*arguendo*) that, as the circuit court found, children who have or would have attended smaller, more local community high schools like Circleville do not do as well in or are not as well served by larger consolidated high schools, and that this disparity is associated with a child's residence or wealth, the question then is whether such a disparity implicates and violates our state constitutional guarantee of the right of education?

This Court has not shied from finding that distinctions and disparities based on wealth or residence may lead to finding a violation of the constitutional right to education. *See Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979) (disparities between richer and poorer counties). *See also Randolph County Board of Education v. Adams*, 196 W.Va. 9, 467 S.E.2d 150 (1995) (free textbooks); *State ex rel. Board of Educ. for the County of Randolph v. Bailey*, 192 W.Va. 534, 453 S.E.2d 368 (1994) (pay equalization); *Collins v. Ritchie*, 177 W.Va. 229, 351 S.E.2d 416 (1986) (*per curiam*) (bus transportation).

In the instant case, appellees base their argument not on disparities in buildings, books, curricula, or teacher salaries, but on the allegedly inherently harmful effects of taking children on long daily bus rides to a school where they and their families are less able to be involved in a wide range of educational and extra-curricular learning activities. Appellees say that modern facilities and equipment do not and cannot make up for the loss of the more fundamental, human-scale educational virtues of the smaller school that is closed as part of consolidation. In sum, appellees asserted and the circuit court found that the closing of Circleville High would on balance be educationally injurious to the appellees, in a disparate and discriminatory fashion associated with their residence and wealth.

Did the circuit court properly find such discriminatory and disparate injuries to the appellees?

The appellants assert and the appellees do not disagree that no jurisdiction has found that school consolidation and/or a state policy of incentives to consolidate result in disparities and adverse effects that implicate a constitutional right to educational services and opportunities.

If required to decide the instant case on this issue, despite the circuit court's findings to the contrary, we would be inclined to say that the appellees did not prove their case on this issue. We make this observation because the record reflects that there has been substantial high school consolidation in West Virginia in the past 20 years—yet the appellees' evidence that tended to show overall disparities and discriminatory adverse effects

from such consolidation was less than over-whelming.

Nevertheless, the circuit court found and there was expert opinion evidence before the court that there are such disparities and adverse effects. We determine that we need not decide whether the adverse effects and disparities alleged by the appellees and found by the circuit court exist, or rise to the level of implicating our state constitutional guarantee of education.

Rather, if we further assume *arguendo* that the appellees sufficiently proved that the SBA/State Board policies generally and in the instant case create or contribute to adverse educational effects and disparities, based on wealth and residence, that are of constitutional significance—then the issue that immediately follows is whether the challenged actions that create or contribute to such alleged effects and disparities are—under a strict scrutiny review—necessary, reasonable, least restrictive and narrowly tailored to advance a compelling state interest. Syllabus Point 2, *Cathe A. v. Doddridge County Bd. of Educ.*, 200 W.Va. 521, 490 S.E.2d 340 (1997).

■ In *Cathe A.*, this Court upheld a circuit court that found that there was a specific, reasonable, safe, feasible, more narrowly tailored and less restrictive state-funded alternative (a tutoring program) to a school board's decision to entirely deny state-funded educational services and opportunities to a child who had been suspended under the Safe Schools Act.

We ratified the circuit court's requiring the local school board to provide the less restrictive alternative; and we found that a blanket statewide policy that school boards had no responsibility with respect to offering alternative state-funded educational services and opportunities to such suspended students was not the least restrictive narrowly tailored feasible alternative necessary to advance a compelling state interest.

As to what state interests are served by a policy of promoting or favoring "economies of scale"—that is, high schools of a certain size (or as close thereto as may be achieved in a county)—the appellants advanced several reasons for such a policy, including: (1) the need to spend limited state educational funds economically; (2) the need to see that all students have access to enhanced curricular offerings; (3) the need have modern, safe physical facilities; and (4) the need to balance competing local and regional needs, interests and resources to achieve greater statewide equality and adequacy of educational opportunity. No one disputes that these are compelling state interests.

In the instant case, the circuit court concluded that none of these (or any other) compelling state interests were served in a necessary, feasible, least restrictive and narrowly tailored fashion, generally or in the Circleville case, by the appellants' allegedly pro-consolidation bias in the distribution of state funds for school building and personnel salaries.[6] The circuit court concluded generally that the state's interests could and should be advanced in a less restrictive and more narrowly tailored fashion.

Based on these conclusions, the circuit court ordered that the County Board's decision to close Circleville High be set aside and that the State Board void its approval of the closing of the Circleville School. The circuit court also ordered the SBA and State Board to modify their policies governing salaries and economies of scale to eliminate any pro-consolidation bias.

Following such actions pursuant to the circuit court's order, appellees apparently believe that upon evaluating the Circleville situation—using a case-by-case, child-centered basis, unaffected by the alleged bias toward consolidation—the SBA would and should fund the physical rehabilitation of the Circleville School, and presumably the County Board would choose to keep it open as a high school, unconstrained by State Board salary limitations.

However, the circuit court's order did not with any degree of specificity identify or

---

**6.** The circuit court also concluded that there was no "rational basis" for the SBA/State Board policies that allegedly skew decisions by local school boards toward consolidation. The record belies this conclusion. The "rational basis" test is one of the more forgiving legal standards, and the evidence put on by the appellants, articulating their reasons for adopting those policies, met this test.

evaluate the nature or costs (financial and otherwise) of statewide policies by the SBA and State Board that would not give preference to "economies of scale"—or more particularly, of policies that would if applied fund the continued existence of Circleville High. On a statewide basis or in the Circleville case, there was no meaningful comparison by the court of any alternatives with the policies and plans used and approved by the appellants SBA and State Board.[7] The circuit court's pronouncements as to the existence, nature, restrictiveness, tailoring, effects and feasibility of such alternative(s) were brief, conclusory, and/or speculative.

Thus, the circuit court did not evaluate in a meaningfully reviewable fashion any purportedly less injurious, less discriminatory, less restrictive, more narrowly tailored and feasible alternative(s) to the challenged SBA/State Board policies, or to the closing of Circleville High.

We do not suggest that in all cases a court assessing the constitutionality of an allegedly discriminatory impairment of the constitutional right to education must identify and evaluate in a reviewable fashion the nature, effects and costs of feasible, less discriminatory, more narrowly tailored and less restrictive alternatives to the approach allegedly causing the impairment, that would also advance the relevant compelling state interests—because such a requirement might not be possible, practical and/or necessary in all cases.

But if a court does not—to a meaningfully reviewable degree—identify, evaluate and compare the apparent costs, effects, feasibility, restrictiveness and narrowness of tailoring of alternatives to the approach that is complained of, then in the absence of other clear evidence of viable less restrictive and more narrowly tailored alternatives, a reviewing court may be more likely to conclude that the lower court did not have a sufficient factual or legal basis to fairly determine whether the complained-of approach is too restrictive, or not as narrowly tailored as reasonably possible. "[A court] cannot shirk its responsibility to articulate the alternatives forming a basis for its decisions, for well reasoned and fully articulated opinions are a major safeguard against judicial abuse of power." Note, *The Less Restrictive Alternative in Constitutional Adjudication: An Analysis, A Justification, and Some Criteria,* 27 Vand.L.Rev. 971, 1035 (1974).

In the instant case, there is no reasonably detailed identification, evaluation or comparison by the circuit court, reviewable by this Court, of alternatives to the policies complained of by the appellees. It is not otherwise clear from the record that there are less discriminatory, feasible, more narrowly tailored and less restrictive alternatives to those policies—that are themselves not educationally injurious and discriminatory in other ways of arguably equal importance.

Therefore, we will not sustain the circuit court's conclusion that the SBA/State Board approach to funding school construction and salaries—and the allegedly resulting closing of Circleville High—is not a narrowly tailored, least restrictive method necessary to advance a compelling state interest. The circuit court's conclusion that the appellants' policies and actions are unconstitutional was therefore erroneous and must be set aside.

Because the appellants' policies and actions did not violate a statutory or constitutional mandate, we hold that the circuit court erred in issuing the declaratory judgment and injunction order appealed from in the instant case.

### IV.

#### Conclusion

For the foregoing reasons, the order of the circuit court is reversed.

Reversed.

---

7. The appellants presented substantial evidence as to the history of the SBA's statewide funding of new school construction and school rehabilitation, demonstrating a facially coherent and balanced program, with objective and reasoned criteria. In the case of Franklin County, the appellants provided substantial evidence of a comprehensive political and policy debate, an exploring and weighing of alternatives, and a lengthy planning process—all addressing a spectrum of diverse educational needs, including the replacing of the Franklin High facilities.